## CHRISTOPHER NEEDHAM *vs.* CHESTER JUDSON.

Land was conveyed bounded thus: Commencing at a point 250 feet northwesterly from a street, on the line of a private way, and running northwesterly by the line of fence on said way and also by land of C. to land of A., easterly by land of A. to land of W., southerly by land of W. to land of N., " thence turning and running in a westerly direction by land of N. and others, by the fence as it stands on a part of said dividing line, and continuing in the same direction until it comes to said private way or point of beginning." The fee of the private way was conveyed by the same deed. *Held*, that the last line must be continued on the line of the fence, though it thereby struck the private way at a point nearer than 250 feet to the street.

A married woman owned a parcel of land which had been conveyed to her by B., and her husband owned the fee of the soil in a private way adjacent thereto. The husband and the wife in her own right joined in a deed which, after conveying her said parcel by metes and bounds, continued: " We also convey to the grantee all our right and title to said private way, with a free and unobstructed way to and from W. Street. Being the same land conveyed " to the wife " by B." The grantors also covenanted that the wife was seised in fee of " the granted premises," and that they were free from all incumbrances " except any right I have given in the private way." *Held*, that the fee of the soil in the private way passed by the deed.

TORT for breaking the plaintiff's close in Newton. Trial and verdict for the defendant, in the superior court, before *Brigham*, J., who allowed a bill of exceptions of which the following are the material parts :

The defendant, being the owner of the lots marked **A** and **B** on the subjoined plan, and also of the fee in the private way,

and having formerly owned lots C and D, in 1860 conveyed to Henry A. Barker "a certain piece of land," being lot A, "bounded and described as follows: Commencing at a point two hundred and fifty feet from Washington Street on the line of a private way, and running by the line of fence on said private way northerly to land of Allen, then by land of said Allen by the line of fence as it now stands to land now or formerly owned by Wentworth, and then turning and running westerly by land formerly owned by me to the place of beginning at said private way, and containing one and three fourths acres, more or less, and however else bounded and described."

Needham v. Judson.

In 1862, Barker conveyed to Harriet N. Judson, the defendant's wife, "a certain tract or parcel of land," being lot A, "containing one and three fourths of an acre, more or less, and bounded and described as follows : Commencing at a point two hundred and fifty feet northerly from Washington Street on the line of a private way, and running northerly on the line of said private way until it comes to land owned by Allen, then turning and running in an easterly direction as the fence now stands to land now or formerly owned by Wentworth, and then turning and running southerly to land formerly owned by Chester Judson, and then turning and running westerly by said Judson's land until it comes to the place of beginning at said private way, or however else bounded or described, and being same land conveyed to me by said Judson."

By deed dated April 13, 1866, the defendant and his wife "in her own right" conveyed to the plaintiff "a certain parcel of land " "containing one and three quarters acres, more or less, and bounded and described as follows, viz. : Commencing at a point two hundred and fifty feet northwesterly from Washington Street, on the line of a private way, and running northwesterly by the line of fence on said way, over the brook running through said private way, and also by land of Crafts to land owned by the heirs of Allen, then turning and running easterly by the line of fence dividing this land from land of said heirs of Allen, as the fence now stands, and bounded by land of said heirs, until it comes to land of Wentworth, (now or formerly,) then turning and running in a southerly direction by said land formerly of Wentworth, to land of the said Needham, [lot D,] thence turning and running in a westerly direction by said Needham's land and land of others, by the fence as it stands on a part of said dividing line, and continuing in the same direction until it comes to said private way or point of beginning, three hundred and nine feet, more or less. And we also convey to said grantee all our right and title to said private way, with a free and unobstructed way to and from Washington Street. Being the same land conveyed to said Harriet N. Judson by Henry A. Barker. To have and to hold the before granted premises, with all

the privileges and appurtenances thereto belonging, to the said Needham and his heirs and assigns, to their own use and behoof forever. And we, the said grantors, for ourselves and our heirs, executors and administrators, do covenant with said grantee and his heirs and assigns, that said Harriet N. is lawfully seised in fee simple of said granted premises; that they are free from all incumbrances except any right I have given in the private way, which may appear of record; that we have good right to sell and convey the same to said grantee and his heirs and assigns forever, as aforesaid; and that we will, and our heirs, executors and administrators shall, warrant and defend the same to said grantee and his heirs and assigns forever, against the lawful claims and demands of all persons."

" The plaintiff claimed that he purchased lot A of the defendant by the deed of April 13, 1866, and the fee in the private way by the same deed; that at the time of the purchase there was a fence standing on the lines $a$, $c$, $g$, and round to $f$ and $d$, on the plan, and that the fence $f$ $d$ extended would strike the line $a$ $g$, or the private way at the point $c$; that there was no fence standing on the line $d$ $e$ on the plan, but a post in the fence $a$ $g$, at the point $c$; that after the purchase the defendant went upon the plaintiff's land on the line $e$ $b$, and dug post holes and attempted to erect a fence on that line; that the defendant then took up the fence $a$ $c$, and placed it in the line $a$ $b$, claiming the line $a$ $b$ as the true line of the private way; that the defendant took all the loam from the private way to the depth of one and two feet across the way for seventy-five feet from the point $b$, towards Washington Street, and from the sides of the way for the remaining one hundred and fifty feet, leaving in the centre a space only ten feet wide; that he removed all of the loam to the defendant's lot by the side of the way; and that the point of beginning as stated in the deed, for the boundary of the plaintiff's lot, was at the point $c$ described in the deed as two hundred and fifty feet from Washington Street.

" The plaintiff asked the court to rule: 1. That by the deeds of the defendant to Barker and of Barker to the defendant's wife, and the deed of the defendant and his wife to the plaintiff,

the fee of the private way was in the plaintiff. 2. That parol evidence be admitted to explain the latent ambiguity in the deed. 3. That the point of departure in describing the plaintiff's land, in the deed to him, was at the point *c*, or at a point in the private way on the line of the fence as it stood on that side of the private way when the deed was made, where the line *f d*, or the fence standing at the back of Needham and Bacon's land produced in the same direction would strike the way, and not at a point two hundred and fifty feet from Washington Street. 4. That the building of the new fence *a b*, out into the private way, beyond the line of the old fence standing when the deed was made, was a trespass on the rights of the plaintiff for which damages would lie. 5. That digging the post holes on the line *e b*, below the line made by extending the fence across the back part of Needham and Bacon's land to meet the private way, was a trespass for which damages would lie. 6. That the taking of the soil from the sides of the way and across the lower part of the way, and removing the same, was a trespass on the plaintiff's right of way for which damages would lie.

" All of which requests for rulings were refused, and the following rulings given : 1. That for the purpose of ascertaining the boundaries of the plaintiff's land, the point two hundred and fifty feet distant from the actual line of Washington Street, and in the line of a certain private way, is to be taken as the point of beginning, and in running the last line indicated in the deed of Harriet N. Judson to him, the line, after leaving the fence as it stood on a part of the dividing line between the land described in the deed and the land of others, is to be determined by the point of beginning and to be directed to that point, notwithstanding the line thus directed would not be in the same direction as that of the line along the Needham and Bacon land. 2. That the plaintiff was not entitled to the fee in the private way, and only to a free and unobstructed way to and from Washington Street. On the rulings and the evidence the jury found for the defendant, and the plaintiff alleged exceptions."

*I. D. Van Duzee*, for the plaintiff.

*S. J. Thomas*, for the defendant.

COLT, J.   In the opinion of the court, upon a true construction of this bill of exceptions and the accompanying deeds and plans, the instructions to the jury must be held erroneous.   It seems to have been assumed by all parties, at the trial below and in the argument here, that the place of beginning of the description in the deed from the defendant and his wife to the plaintiff was at a point two hundred and fifty feet from Washington Street, in the east instead of the west side of the private way described.   We find nothing in the papers which sustains this idea.   The description is much more perfect and consistent, if the starting point is located on the west side of the private way.   Thence it runs northwesterly without change of course by the line of the fence and land of Crafts over the brook to land of Allen, and so on around the land conveyed. All the elements in the description of the first line can only be met by beginning on the west side.   This private way appears to have been well located and defined by fences or otherwise, and to have extended northerly past the rear end of the three lots fronting on Washington Street.

The controversy in this part of the case arises out of the fact that the last line in the description runs westerly by the north or rear line of the three lots by the fence as it stands on a part of the dividing line, and in the same direction after leaving the fence, until it comes to said private way or point of beginning, and thus extended strikes a point on the private way which is less than two hundred and fifty feet from Washington Street.

The learned judge in substance ruled that this line, after leaving the fence, was to be run to a point two hundred and fifty feet distant from the street, although it should thereby be deflected from a straight line.   Without stopping to consider whether the line thus located by a standing fence and straight course would not control the distance of the starting point from Washington Street, by the rule that monuments govern distances, ( *George* v. *Wood*, 7 Allen, 14,) we suggest another interpretation which harmonizes all clauses in the deed.   The private way is a well defined strip of land the fee of which it is agreed was in the defendant, subject to certain rights of way granted by

him, while the title to the rest was in his wife. The last line is, in terms, run to this private way or point of beginning, showing an intention either to regard the private way as the point of beginning, or to make it the alternative termination in case the line as run should not strike the exact point of starting.

This view is confirmed by the further result reached by us, which is, that the deed conveys to the plaintiff the fee in the private way subject to the easements created by the defendant, and so joins all the lines. It is argued that the defendant only joined in the deed for the purpose of conveying his wife's estate; and that the land conveyed by the deed of Barker to the wife, as referred to, is all that was deeded to the plaintiff. But after describing by metes and bounds thé wife's land, it adds, "also all our right and title to said private way, with a free and unobstructed way to and from Washington Street." The doubt which might arise as to the effect of these words, standing alone, is removed by the restricted covenant that the premises conveyed are free from all incumbrances "except any right I have given in the private way," which could only have been used with the understanding that the fee of the way passed by the deed. The reference to Barker's deed, even if it can be construed as a recital of an intention to convey only the real estate described in it, follows the particular description. And such reference, it has been held, will not exclude any parcel of land actually included, though it might convey land not included in the particular description. *Whiting* v. *Dewey*, 15 Pick. 428.

*Exceptions sustained.*