## City of Charlestown *vs.* Arthur W. Tufts.

A town owned a strip of land between a highway and tide water and stretching from land of A. to land of B.; on the middle of the water front was a hill, used as a burying ground, which extended back from the shore, but not to the highway. In 1648 the town voted "that the burying hill should be compassed with a sufficient ditch," and in 1656 they granted a parcel of land, describing it as common ground from A.'s land to B.'s, "which ground is bounded northeast by the highway, and southwest by the skirts of the burying hill as far as is laid out and marked round; the burying hill remaining free and entire for the town use, only liberty is granted to" the grantees "to feed on the burying hill." *Held*, that the burying hill was a monument or boundary, and not a lot excepted out of the grant, and that therefore the flats between the hill and low-water mark were not included in the grant.

WRIT OF ENTRY to recover a parcel of flats in Prison Point Bay, lying between the old burying ground in Charlestown and low-water mark. The demanded premises are shown on the plan in the margin.

At the trial in the Superior Court, before *Wilkinson*, J., it appeared that the demandants acquired title to the demanded premises in 1633 by grant from the Colony.

Main Street.

Sallye.                    Chalkly.

Burying Ground.

High -water Mark.

Demanded Premises.

Low-water Mark.
**Prison Point Bay.**

The tenant introduced in evidence the following extracts from the records of the town of Charlestown : " 1648. At a meeting of the selectmen the 8th of the 11th month, it was agreed that the burying hill should be compassed with a sufficient ditch and a pair of gates upon the causeway at the town's charge." " 1656. By the selectmen the 24th day of the 11th month. In consideration of twelve pounds in good merchantable wheat and pease, of each a like quantity, to be paid to the selectmen for the town's use by the 29th of the 7th month 1656, by Solomon Phipps and Lawrence Dowse, the selectmen have sold and do hereby confirm unto the said Phipps and Dowse as their proprieties all that common ground from Robert Chalkly's unto the corner of the ground of Manus Sallye's heirs, which ground is bounded northeast by the country highway, and southwest by the skirts of the burying hill as far as is laid out and marked round ; the burying hill remaining free and entire for the town use, only liberty is granted them to feed on the burying hill, provided no inconvenience accrue to the hill. The broad way going up to the burying hill fully reserved to the town's use. And Solomon Phipps and Lawrence Dowse are to make and maintain the gate to that way to the burying hill, also the lime kilns are excepted, and a free way to the same."

The tenant also introduced evidence that Main Street now runs where the highway mentioned in the above extract formerly ran, and that Chalkly's and Sallye's lands were situated as indicated on the plan.

It appeared that all the land between Main Street and the burying hill was originally marsh land; that between 1800 and 1820 there were traces of a ditch on the northeasterly side of the hill ; that the demandants have been in actual possession and occupation of the burying hill since 1633 ; and that it has been and now is used as a burial place.

The tenant introduced in evidence, against the objection of the demandants, several deeds from persons claiming under Phipps and Dowse by which a part of the estate granted to them became vested in himself. The description in some of these deeds, the tenant contended, covered the demanded premises ; but it is

not now necessary to state them. He also introduced in evidence the report of a committee appointed in 1766 by the town of Charlestown to ascertain the town's estates and rights, which report was adopted by the town in March 1767. This report contained descriptions of forty-two parcels of land. The 22d was as follows: " There is a hill, called Burying Hill, which belongs to the town, only Mr. Rand has a right to feed the same, with a broad way and a way to the lime kiln." In the description of sixteen of the parcels, the premises were described as extending to low-water mark.

The demandants offered evidence tending to show " that about 1820, on the water side of the burying hill, there was a sandy beach, and that the demandants at that time constructed a sea wall, on a line about fifteen feet below high-water mark, the whole length of the water side of the hill, placed a high fence on the wall, and constructed a road way between the tombs and the wall around the base of the hill."

The judge, being of opinion that the rights of the parties were to be determined by the construction to be given to the grant of 1656, reported the case, with the consent of parties, for the consideration of this court. If the court should be of the opinion that the demanded premises passed by that grant, judgment to be entered for the tenant; if the same did not pass, then the court to give directions as to the determination, by commissioners, or otherwise, of what flats are appurtenant to the burying hill, and to give judgment for the demandants accordingly.

*W. S. Stearns*, for the demandants.

*T. H. Sweetser & C. Robinson, Jr.*, for the tenant.

GRAY, J. The town record of the grant of 1656 describes the land granted as extending from Chalkly's ground (on the southeast) to the corner of Sallye's ground, (apparently the corner of his lot at the highway, on the northwest,) and the only other boundaries which it gives are " bounded northeast by the country highway " (since known as Main Street) " and southwest by the skirts of the burying hill as far as is laid out and marked round."

The burying hill is referred to as a monument or boundary, and not as a lot excepted out of the grant. The further description

of that hill as " remaining free and entire for the town use " affirms rather than impairs or qualifies the effect of the call for it as a boundary, and as introductory to the further grant of liberty of grazing on the hill. The words of the grant do not imply, and it is not to be presumed, that the ditch, with which it had been ordered eight years before " that the burying hill should be compassed," extended entirely around the hill towards tide water.

No mention being made of the adjacent flats, the title in them depended upon the ordinance of 1647, annexing the flats to the upland. Those lying immediately in front of the land granted, wherever it touched the shore on either side of the hill, doubtless passed as parcel of the grant. But those in front of the hill belonged to the proprietors of the hill, and the boundary by the hill excluded them. *Rust* v. *Boston Mill Co.* 6 Pick. 158, 167. *Barker* v. *Bates*, 13 Pick. 255, 256, 261.

The extent of that grant cannot be enlarged, as against the town or city of Charlestown, by the terms of the mesne conveyances under which the tenant claims, nor by the fact that, in the report of the committee appointed by the town in 1766 to ascertain and assert its rights in lands, the burying hill is enumerated as one of the estates of the town, without alluding to the flats adjoining.

As the tenant shows no title in the demanded premises, there must by the terms of the report be

*Judgment for the demandants.*