ELI F. HENSHAW *vs.* STEPHEN MULLENS.

Worcester. October 4. — 23, 1876. COLT & MORTON, JJ., absent.

A deed of farming land described the eastern boundary line by several courses and distances to the "end of a wall, thence northerly seventy rods to land of F." The deed also contained a clause that the grantee should maintain "the northerly half part of the fence" between the land conveyed and the adjoining land of the grantor. At the time of this conveyance, there was a stone wall on the eastern boundary to the point described as "the end of a wall," and from this point an old fence, much decayed and fallen, ran on an irregular line, seventy rods in length, to the land of F., while the distance in a straight line from the end of the wall to the land of F. was seventy rods and nine links. *Held*, that there was no ambiguity in the deed, and that the line from the "end of a wall" to the land of F. was a straight line. *Held, also*, that the acts and declarations of the grantee, made after he took his deed, were inadmissible against him to show that the irregular line was the boundary.

WRIT OF ENTRY to recover possession of a parcel of land in Warren. Plea, *nul disseisin.* Trial in the Superior Court, be-

fore *Gardner*, J., who allowed a bill of exceptions in substance as follows:

The issue was as to the true boundary line between the demandant's lot and that of the tenant for a space of about seventy rods, there being no dispute as to the other parts of the line. The lots of the demandant and tenant, between which the line in dispute runs, were formerly parts of the same farm, known as the Chadwick farm, which became the property of Makepeace and Bosworth as tenants in common. They made a conveyance to the tenant of the western portion of the farm, by a deed in which the easterly line was described as follows, the portion now in dispute being printed in italics: " Commencing at stake and stone on the east side of meadow owned by J. W. Talbot; thence north $63\frac{1}{4}°$ east sixteen rods and twenty-two links to a large rock; thence north $10\frac{1}{2}°$ east eighteen rods and three links to a corner of a wall; thence north 76° west two rods and twenty-three links; thence north 5° east forty-two rods and sixteen links; thence north $21\frac{1}{4}°$ east six rods and eleven links, to the end of a wall; *thence northerly* 70 *rods, to land of E. Flagg;* thence by land of Flagg to land of Josiah Henshaw; thence by land of said Henshaw to the road." This deed also contained the clause: " It being agreed that said Mullens, his heirs and assigns, shall maintain the northerly half part of the fence between said piece of land and the adjoining land of said Bosworth and Makepeace." A plan of the land was introduced at the trial, the material part of which is printed in the margin.*

Subsequently, Bosworth having conveyed his interest to Makepeace, the latter conveyed the portion of the farm lying easterly

of Mullens's line to the demandant, by a deed in which the description of the western boundary was as follows: "By land of Talbot to land of Stephen Mullens ; thence northerly on said Mullens to land of Flagg; thence northerly on said Flagg to land," &c.

The demandant contended that the line described in the tenant's deed as running "northerly seventy rods to land of E. Flagg," was an irregular line, and ran N. 6¾° W. 26 rods, thence N. 19° W. 18 rods, thence N. 4¾° W. 10 rods, thence N. 10½° W. 8 rods, thence N. 16½° W. 8 rods. The tenant contended that it was a straight line.

The demandant put in evidence showing that there was, at the time of the conveyance to the tenant, on the irregular line, an old fence much decayed and fallen, and that on the rest of the tenant's easterly line was a stone wall ; and offered parol evidence of the acts and declarations of the tenant since he took his deed, as to the old fence being the boundary between the land of the demandant and that of the tenant, and of his treatment of the old fence as said boundary, with a view and for the purpose of showing the construction placed by him on the deeds in question, and on his deed as to his true easterly line at this point. The tenant objected to this evidence to prove that the line described as "thence northerly 70 rods to land of E. Flagg" could be the line of the old fence or other than a straight line. The judge overruled the objection and admitted the evidence.

The line by the old fence measures seventy rods. The straight line, as claimed by the tenant, measures seventy rods, nine links, and this line strikes Flagg's land six or eight feet westerly from the corner of Flagg's wall.

At the conclusion of the testimony, the tenant asked the court to rule as follows: "1. The deeds, construed together, fix the disputed line between the parties so as to preclude the possibility of the old fence being the boundary. 2. Under the circumstances surrounding the case, the deeds are to be construed to give Mullens a line from the end of the stone wall to Flagg's corner."

The judge refused so to rule, but instructed the jury as follows : "The acts and admissions of the tenant as to the construction given by him as to the boundary are to be considered

by you, with the other evidence in the case, upon the question where this boundary line is, as was intended at the time the deed was given. In the absence of all controlling evidence, the true boundary would be a direct line from the end of the cross wall to land of Flagg; but if you are satisfied that, at the date of the deed, there was in fact a fence passing in an indirect line from the end of the wall to Flagg's land, and that this fence answers the distance called for in the deed; and you should also be satisfied, from the acts of the parties to the deed at the time of its execution, that they understood and intended said fence as the true boundary between their lands; the triangular piece of land would not pass to the tenant." Other instructions not objected to were given to the jury.

The jury returned a verdict for the demandant; and the tenant alleged exceptions to the refusal to rule as requested and to the instructions given.

*W. S. B. Hopkins*, for the tenant.

*F. P. Goulding*, for the demandant.

ENDICOTT, J. The parcel of land which the demandant seeks to recover lies on the boundary line between him and the tenant; and the location of this line is the question in dispute. Makepeace and Bosworth owned the whole tract known as the Chadwick farm, as tenants in common, and conveyed to the tenant the western portion. Bosworth afterward conveyed his interest to Makepeace, who then conveyed the eastern portion to the demandant.

The deed of the tenant particularly describes the boundary line now separating the two portions. It begins at land of Talbot, and thence runs by courses and measurements in an irregular line " to the end of a wall." It appears by the demandant's evidence that a stone wall stood on this portion of the boundary, from the land of Talbot to the end of the wall, as mentioned in the deed and marked upon the plan. From the end of the wall the line is described as running " thence northerly 70 rods to land of Flagg." The deed of the demandant bounds the land conveyed to him on this side " by land of Talbot to land of Stephen Mullens, thence northerly on said Mullens to land of Flagg thence northerly on said Flagg to land," &c. This deed bounds on land of Mullens as a monument, and the question in dispute

must be determined by the construction to be given Mullens's deed.

The tenant contends that the line from the end of the wall to land of Flagg is a straight line to the corner or near the corner of Flagg's land, measuring seventy rods and eleven links. The demandant, on the other hand, says that it is an irregular line, seventy rods in length, following the courses of "an old fence much decayed and fallen," which appear upon the plan, and striking the land of Flagg about eleven rods from the corner of Flagg's land. The demandant was allowed to introduce evidence of the acts and declarations of the tenant after he took his deed, to the effect that the line of the old fence was the true boundary, for the purpose of showing the construction put by him upon the deed.

But, upon examination of the language of the deed, we are of opinion that it is not of doubtful construction, and that parol evidence of the acts and declarations of the tenant was incompetent. The deed carefully recites courses and distances along the stone wall, where the line is irregular, and from the end of the wall gives but one course to the land of Flagg. This must be taken to be a straight line, in the absence of anything to the contrary in the deed. *Jenks* v. *Morgan*, 6 Gray, 448. If the grantor had intended to describe an irregular line along the several courses of the decayed and fallen fence, the presumption is that he would have done so in the same manner as he described the other portion of the boundary, where the line was irregular. It is true that the straight line measures seventy rods and eleven links, while the irregular line is seventy rods in length, as called for in the deed. But this slight difference in the measurement of a line, in a deed of farming lands, when the whole line is between eleven and twelve hundred feet long, does not so far render the construction of the deed doubtful, that parol evidence is necessary or competent to explain it.

Nor can we give the construction contended for by the demandant to the clause in the deed of the tenant, that he " shall maintain the northerly half part of the fence " between him and the land of the demandant. This evidently refers to the whole line, and not merely to the portion where the old fence is. The obligation applies quite as much to the maintenance of a fence

on the straight as on the irregular line, and throws no light on the construction to be given to the deed.

The construction we give to this deed is confirmed by the boundaries set forth in the demandant's deed. The line is there described, after it strikes the land of Mullens, as " thence northerly on said Mullens to land of Flagg, thence northerly on said Flagg to land of Sibley." This line runs in the same general direction against Mullens and Flagg, which accords with the construction we give to the deed of Mullens. If the demandant's construction is correct, his deed should give two courses, first easterly, then northerly on Flagg, as will appear by referring to the plan.

The evidence was therefore incompetent, and the instruction requested by the tenant should have been given.

*Exceptions sustained.*