## SYLVESTER DEVINE *vs.* ISAAC C. WYMAN.

Suffolk. January 14. — April 6, 1881. COLT & FIELD, JJ., absent.

On a writ of entry, it appeared that the owner of a large tract of land lying between O Street and P Street conveyed the lot bounded on O Street to A., the next lot to B. and the remaining land to C., who conveyed to D. a lot bounded by P Street, describing it of a certain width, to the tenant a lot of certain width bounded easterly by D.'s land, and to the demandant a lot also of a certain width, bounded easterly by the tenant's land and westerly by B.'s land. It was found as a fact that the line of P Street had not been changed from its position since it was established, while the line of O Street had varied. *Held*, that the demandant, for the purpose of establishing his easterly line, was entitled to put in evidence the deeds to D. and to the tenant; and that the tenant was not entitled to put in evidence the deeds to A. and B.

WRIT OF ENTRY to recover a parcel of land in South Boston, bounded and described as follows: "Beginning at a point on the northerly side of Broadway, distant seventy feet from the intersection of the northerly line of Broadway with the westerly line of P Street; thence turning at a right angle and running northerly seventy-five feet; thence turning at an acute angle and running southwardly as the fence and building now stand in a straight line to a point seventy $\frac{83}{100}$ feet westerly from the intersection of the said streets; thence turning and running easterly $\frac{83}{100}$ of a foot to the point of beginning." Writ dated December 22, 1879. Plea, *nul disseisin.* Trial in the Superior Court, without a jury, before *Colburn*, J., who allowed a bill of exceptions in substance as follows:

The demandant showed by A. Wadsworth, a surveyor, that the westerly line of the tenant's house and fence, which were built in 1862, was distant seventy $\frac{88}{100}$ feet on Broadway westerly from P Street, as that street now runs. He then put in the deed to himself from Fuller and another, trustees, dated May 22, 1860, which described his lot as bounding south on Broadway thirty feet, easterly on the tenant's lot, and westerly on the lot of Enwright; and then, to prove that his proper easterly boundary line adjoining the tenant's lot was but seventy feet from P Street, and to show the line of the tenant's land, as a monument called for in his deed, offered the deed from the same grantors to the tenant of his lot, dated August 15, 1859, which described it as bounding thirty feet south on Broadway, east on land of one Park, and west on other land of grantors by a line parallel to said Park; and also the deed from said grantors to Park, dated August 1, 1859, which described it as bounding forty feet south on Broadway, easterly on P Street and west on other land of grantors by a line parallel to P Street. The tenant objected to the introduction of these last two deeds, but they were admitted, and the tenant excepted. The relative positions of the lots appear on the plan printed in the margin.*

Wadsworth testified that the location of P Street had not been changed since 1836 and 1837, when he laid out that street. To control this, the tenant first showed by city records and plans that, by a city survey made in 1841 by said Wadsworth, P Street was located five hundred and six $\frac{50}{100}$ feet east of O Street; that, by a general relocation in 1868, under a commission of which said Wadsworth was one, the line of P Street was permanently fixed five hundred and seven $\frac{26}{100}$ feet east from O Street, which is its present distance. He then called Park as

Broadway.

a witness, who testified that he still occupied the lot bought by him in 1859; that his boundary lines were shown to him, in the afternoon of the day he took his deed, by the son of one of his grantors, but that no monuments were then put up or existed, except the streets, and that upon his westerly line, as so given, he within a few days erected a fence, and, later, an L of his house on the line of part of the fence; that the fence was not now standing, but was distant on Broadway forty $\frac{68}{100}$ feet west of P Street, as now fixed, or eighteen inches west of the south-west corner of his house, which was thirty-nine $\frac{18}{100}$ feet west of the present P Street, and thence ran in the same general direction as P Street, varying in distance from that street from forty $\frac{84}{100}$ feet to forty-one $\frac{26}{100}$ feet. This evidence, the tenant contended, fixed a monument controlling the distance given in the deed to Park; but the judge ruled otherwise.

The tenant then offered the deeds to Enwright of the lot above referred to in the demandant's deed, and of that to the United States of the lot on Broadway, between Enwright's lot and O Street, both earlier in point of time than the deeds put in by the demandant, and from the same grantor from whom the grantors in the later deeds derived title, both as tending to fix the location of Enwright's lot as a monument, and also to show that the boundary lines on Broadway given therein, (one hundred and ninety feet ten inches in Enwright's, and two hundred and fifteen feet eight inches in the United States deed, amounting to four hundred and six $\frac{50}{100}$ feet,) added to the thirty feet, the demandant's boundary line on Broadway, in the deed put in by him, would bring the demandant's eastern boundary at this point distant seventy $\frac{76}{100}$ feet from P Street as now located, and reduce the alleged encroachment to a triangle, having $\frac{7}{100}$ of a foot base on Broadway, and its apex about six feet from that street. But the judge excluded the evidence, and the tenant excepted. The tenant also contended that said deeds were competent, because, taking the boundary lines given therein on Broadway, in all four hundred and six $\frac{50}{100}$ feet, together with the lines on Broadway given in the deeds put in by the demandant, one hundred feet, the whole distance, five hundred and six $\frac{50}{100}$ feet, corresponded with the former distance between O and P Streets, and thereby tended to show the location of Enwright's

lot as a monument from both streets, and the true position of the demandant's easterly line; but the judge excluded the evidence in this view also, and the tenant excepted.

The judge found, as a fact, that the lines of P Street had not been changed from their position as located and fixed in 1836 and 1837 by monuments, and that there was nothing to control the distances given in the deeds to Park and the tenant; and found for the demandant. The tenant alleged exceptions.

*J. Willard*, for the tenant.

*J. L. Thorndike*, (*F. C. Welch* with him,) for the demandant.

LORD, J. The presiding judge found, as a fact, that the westerly line of P Street had not been changed since it was laid out in 1836 and 1837. The evidence tended to show that like facts did not exist as to the easterly line of O Street. The westerly line of P Street was therefore a fixed and definite boundary, controlling distances if there should be any discrepancy in a deed between monuments and distances. The easterly line of O Street was not shown to be a fixed monument. If there had been evidence that such line was a fixed, definite and known line, the question presented as to the admissibility of the deeds to the United States and to Enwright would be a different one. All that the deeds had any tendency to prove was that the lands granted to the United States and to Enwright extended a certain number of feet from a line which was not itself a fixed and definite line. The limit of those grants was as uncertain as the location of the easterly line of O Street. This rendered the contents of those deeds immaterial, so that it is unnecessary to inquire whether there is any such monument described in them as would have been competent for the tenant to refer to if the location of such monument, which was itself a tract of land, had been fixed and certain. As to the other deeds, there can be no doubt that they were competent evidence. The land conveyed to Park, that conveyed to the tenant and that to the demandant were from the same grantors. Park's deed was first in time, the tenant's second and the demandant's third. Park's deed bounded upon the east on the westerly line of P Street, which was a fixed monument, and his westerly line was parallel to that line and forty feet distant from it. The westerly line of

Park's land was therefore as certain as the easterly line. The tenant's deed bounds him easterly upon Park's land, — that is, on the land to which he had title, though he occupied beyond, — which had become a certain monument; and his westerly line was parallel with it, and thirty feet distant from it. That land was also a fixed monument. The demandant's deed bounded him easterly upon that monument, to wit, the westerly line of the tenant's land; and although it describes his westerly line as upon Enwright's land, and thirty feet distant from the tenant's land, yet by its true construction it grants the land between the tenant's land and Enwright's land, wherever that land may be. Where that line is, is a question only between the demandant and Enwright; for, the demandant having established his right to all the land between the tenant's land and Enwright's, the only material question between these parties was, Where was the tenant's true westerly line? And that line was conclusively fixed by his deed, and cannot be affected by the position of Enwright's line.                                *Exceptions overruled.*