THE MISSOURI PACIFIC RAILWAY COMPANY v. TYGARD
*et al., Appellants.*

1. **Railroad, Subscription to** : CONSTRUCTION OF CONTRACT. Where a contract for subscription to a railroad is made on the condition that it will locate its depot within a specified distance of a certain point, as a court house, and nothing is said as to the manner of measurement, the distance is to be measured by a straight line and not by the traveled route.

2. **Contract**: SUBSCRIPTION TO RAILROAD. A contract for subscription to plaintiff's railroad also provided that its road should be completed

84 263
124 686

84 263
67a 283

84 263
81a 684

and put into operation to a specified town on or before January 1st, 1881, and it appeared that the road was graded to said town by said time, but was only completed by that time to a connection with another road at a point one mile south of the town, over which other road plaintiff's road was put into operation from January 1st, 1881, until May 1st following, after which time plaintiff used its own roadway, which, in the meantime, had been fully constructed and prepared for operation and use. *Held*, that there was a fair and substantial compliance by plaintiff with its contract which is all that was required.

8.   **Subscription to Railroad:** PUBLIC POLICY. A subscription to a railroad as a donation to induce it to locate the road at a particular place is not void as being against public policy.

*Appeal from Bates Circuit Court.*—HON. JAS. B. GANTT, Judge.

AFFIRMED.

*A. Henry, T. J. Galloway, P. C. Fulkerson, W. P. Johnson,* and *E. J. Smith,* for appellants.

(1)   The notes were a bonus or donation to the railroad on certain conditions, and the road did not comply therewith, and there can be no recovery. In a case of conditional subscription (which must be distinguished from a donation) it was held by the Iowa Supreme Court that a depot at a town should be inside and not outside of it. *R. R. v. O'Connor,* 40 Ia. 477. (2) But if the conditions had been strictly complied with, the contract could not be enforced as it is against public policy and is void. 14 Hun. 392; *Dix v. Shaver,* 1 Hill 518; *R. R. v. Seely,* 45 Mo. 212; *Holloway v. Patterson,* 5 Oregon 177. (3) But even if the depot had been located within the city of Butler, it was not within three fourths of a mile of the court house by any line of travel, and the contract for this reason was not complied with by the railroad. *Wood v. Dennett,* 2 Starkie R. 89; *Leigh v. Hind,* 4 M. & R.; *Atkins v. Kinner,* 4 Excheq. Rep.

The Missouri Pacific Railway Company v. Tygard.

*Railey & Burney* for respondent.

(1) Under our statute the notes and contracts in controversy are not invalid as being contrary to public policy. Even without the statute they would be valid. Revised Statutes, section 765; *Berryman v. Ry. Co.*, 14 Bush 755; *First Nat. Bk. v. Hendrie*, 49 Ia. 402; *Cumberland Valley v. Ry. Co.*, 9 Watts 458; *McClure v. Ry. Co.*, 9 Kan. 373; Pierce on Railroads, 60, 61; *Racine Co. Bk. v. Ayers*, 12 Wis. 512; *Workman v. Campbell*, 46 Mo. 305; *Pacific R. R. v. Seeley*, 45 Mo. 212; 23 Albany L. J., pp. 85, 86. (2) The contract being silent as to how the distance from the court house to the depot should be determined, it should be measured by a straight line. Pierce on Railroads, 63; 1 Redf. on R. R. 414; 1 Rorer on R. R. 482; *Cedar Falls, etc. v. Rich*, 33 Ia. 113; *Courtwright v. Strickler*, 37 Ia. 382; *Butler v. Barr*, 18 Mo. 357; *Allen v. Kingsberry*, 16 Pick. 235; *Kingsland v. Chittenden*, 61 N. Y. 618; *Slade v. Etheridge*, 13 Ired. L. R. 687; *Lake v. Butler*, 85 Eng. Con. L. R. 91; *Jewett v. Stead*, 88 Eng. C. L. 349; *Burnett v. Thompson*, 6 Jones L. R. 211. (3) Under the terms of the contract the railroad was not required to build its depot within the corporate limits of the town of Butler, said contract providing "and shall also establish and construct a depot within three-fourths of a mile of the court house in said city of Butler." *McGregor v. Ry.*, 38 Ia. 592; *Wooters v. Ry.*, 54 Tex. 294. (4) The plaintiff substantially complied with the requirement of the contract to complete its road to Pleasant Hill by January 1, 1881, and this was sufficient. *People v. Holden*, 82 Ill. 93; *Courtwright v. Deeds*, 37 Ia. 503; *State, etc., v. Hastings*, 24 Minn. 78; *Hodgman v. Ry.*, 23 Minn. 153; *Von Hostrup v. City of Madison*, 1 Wall. 291; *Stockton R. R. v. Stockton*, 51 Cal. 334; *State, etc., v. Town of Clark*, 23 Minn. 422. (5) The plaintiff having complied with the

conditions of the contract became entitled to the posses-
sion of the notes and contracts, and could sue thereon
without actual delivery of the same. 1 Parsons on
Notes 51 ; *Couch v. Meeker*, 2 Conn. 302 ; *Taylor v.
Thomas*, 13 Kas. 218 ; *State Bk., etc., v. Evans*, 15 N. J.
L. 155 ; *Shirley v. Ayres*, 14 Ohio 307 ; *Regan v. Howe*,
121 Mass. 424 ; Bishop on Contracts, 764 ; *Campbell v.
Wolf*, 33 Mo. 459 ; *Bowling v. Hax*, 55 Mo. 448 ; 1
Daniel on Neg. Instruments 54.

BLACK, J.—This was a suit to recover the posses-
sion of one hundred and seventy-three notes, or sub-
scription contracts, given by various persons to the
Lexington and Southern Railway Company, to aid in the
construction of that road.   The defendant, Tygard, held
the notes in compliance with a stipulation contained in
each note, to the effect that if the company should com-
plete and put in operation its railway of standard gauge
from the town of Pleasant Hill in Cass county to the
city of Butler in Bates county, and should establish and
construct a depot within three-quarters of a mile of the
court house in the city of Butler, all to be done and
completed as aforesaid by or before the first day of
January, 1881, then the notes were to become the prop-
erty of the company, were to be delivered to it, and were
to be paid according to their tenor ; but if the company
should fail so to do, then the notes were to be delivered
to the makers.   The persons who made these notes were
made defendants on motion of Tygard.   After the notes
were given, and in 1880, this company was consolidated
with the plaintiff, which became entitled to them on
complying with these conditions in the contracts stated.
It is admitted that the road was completed and put in
operation from Butler to a point within one mile of
Pleasant Hill, and that the depot was established and
constructed within the specified time ; but the defence
is, that the depot was not located within the corporate
limits of the city of Butler, nor within three-quarters of

a mile of the court house; that one mile of the Pleasant Hill end of the road was not completed within the specified time; and that the notes ought to be held void from considerations of public policy.

1. An inspection of the contract will show no agreement to place the depot or to build the road into the corporate limits of Butler. There was some evidence tending to show that the depot as located was not within three-quarters of a mile of the court house, by any then traveled road, but it was conceded that the depot was within less than that by direct measurement, and this the circuit court held sufficient. This ruling is assigned as error. Where a line is given in a deed, or commissioner's report, to be run from one point of measurement to another, it must be taken to mean a straight line, unless there is a different intent expressed. *Allen v. Kingsbury*, 16 Pick. 238; *Jenks v. Morgan*, 6 Gray 449; *Henshaw v. Mullens*, 121 Mass. 143; *Butler v. Barr*, 18 Mo. 357. Where the road is to be located within a specified distance of a certain point, and nothing is said as to the manner of measurement, the law is well settled that the distance is to be measured by a direct line, and not by the traveled route. *R. R. v. Rich*, 33 Iowa 113; Pierce on Railroads, 63; 1 Rorer on Railroads, 482; 1 Redfield (6 Ed.) 414.

2. On trial it was admitted that this road formed a junction with the Atchison, Topeka and Santa Fe Railroad, at a point one mile from Pleasant Hill, and from that point to Pleasant Hill the L. & S. road used the track of the A., T. & S. F. R. R. to May, 1881. This mile of the L. & S. road was graded on January, 1881, but not ironed and put in use until May, 1881; but the road was in full operation from Pleasant Hill to Butler and beyond at the stipulated time. Undisputed evidence also shows that the plaintiff owned its depot, stock yards, and tracks thereto at Pleasant Hill, which the A., T. & S. F. road used. *State ex rel. v. Town of Clark*, 23 Minn. 422, was a proceeding by mandamus to compel

the town to issue bonds, which were to be issued on condition that the railroad company should, on or before a specified day, have completed, ironed, and equipped its line of road from Wells to Mankato, and have the same in operation for transportation of passengers and freight. The road was completed to a point within a fourth and half mile of Wells, and from that point it ran over the track of another road into the village of Wells, and this was held to be a substantial compliance with the contract. *The People ex rel. v. Holden et al*, 82 Ill. 93, was a like proceeding. The bonds were not to be delivered until the railroad was completed, equipped, and in successful operation from Paris to Danville. The road was thus built from Paris to a point one mile from Danville, where it formed a connection with the Toledo, Wabash and Western Railway, and by an arrangement with that road, ran over its track to Danville, and this was held to be a compliance with the terms of the contract. There must be a fair and substantial compliance with the conditions of the contract, and this is all that is required. These cases before cited, and the cases of *Courtwright v. Deeds*, 37 Iowa 503; *State of Minn. ex rel. v. City of Hastings*, 24 Minn. 78; *Ry. Co. v. Stockton*, 51 Cal. 334, and *Jackson v. Stockbridge*, 29 Tex. 394, will serve to show what the courts of other states have held to be such substantial compliance. The road was fully completed for all purposes of transportation of passengers and freight and put into full operation, and this was the evident object which the parties had in view. The terms of the contract are to "complete and put in operation," and this was done, though the company did not own one mile of the track which it then used. This defence, we conclude, is without merit.

3. Defendants in their answer allege, in substance, that they gave these contracts for the purpose of offering to the officers of the company a donation to induce them to vary the line of the road so as to be of greatest benefit to defendants; that such officers had proposed to change

the line of survey so as to be of special benefit to defendants, if they, defendants, would sign the agreement, and that the notes, or contracts, were made in the name of the company for that purpose. There was no evidence offered tending to show that these agreements were made for the personal benefit of any officer, but there was evidence offered tending to show that they were made to induce a variation in the proposed line of the road, which was excluded by the court, but what the variation proposed to be shown was, does not satisfactorily appear. The defendants place much reliance upon the case of the *Pacific R. R. Co. v. Seely et al.*, 45 Mo. 212, but it is apparent there is but little or no analogy between this case and that. There the contract, in part, was to lay off one hundred and sixty acres of land into town lots, and to make a deed to one-fourth of the lots to such persons as the directors might designate, in consideration that plaintiff would locate a station on the lands. It was a speculation in which the corporation had no right to engage, and a flagrant abuse of its corporate powers. The court rightfully enough declined to lend its aid in the specific execution of such a contract.

This case is much more analogous to that of *Workman v. Campbell*, 46 Mo. 306, where the suit was based upon a subscription made by the defendant to pay certain moneys to be used in securing the location of the depot of the Pacific railroad on certain lands near Knobnoster, and in consideration of which subscription the plaintiff did secure the depot at the proposed place, and the contract was held to be valid by the court. In *Bank v. Hendrie*, 49 Iowa 403, the notes sued upon were given to secure the building of the railroad then in question to Council Bluffs. The road had been so located as to reach the river many miles from that place. The officers of the corporation proposed, upon sufficient inducements in the way of contributions, to so change the route as to strike the river at Council Bluffs. This proposition was accepted and the notes there sued upon were given for

the defendants' subscriptions, and were held to be valid. Many authorities are to the same effect, certainly to the effect, that a subscription as a donation to induce the location of a railroad at a particular place is not void. *Berryman v. R. R. Co.*, 14 Bush 755; *R. R. Co. v. Baab*, 9 Watts 458; *McClure v. R. R. Co.*, 9 Kas. 373.

Contracts made with an officer of a railroad corporation and for his personal benefit to induce him to procure a particular location, stand upon other and different grounds, and are not to be upheld. This corporation was organized under the general laws of this state and had the right to receive donations to aid in its construction. Section 765, Revised Statutes, 1879. There was nothing shown or offered to be shown in this case which disclosed that these contracts were detrimental to the public welfare. Indeed, it would seem that the location of the road near to Butler would greatly subserve the public interest. It was the policy of the legislature of this state for many years to allow cities to make conditional subscriptions to railroads, and they were made for the express purpose of procuring a location at a particular place. The court did not err in directing a verdict for plaintiff.

Judgment affirmed. All concur.