Town of Blackstone *vs.* Town of Millville & another.[1]

No. 01-P-1506.

Suffolk. April 10, 2003. - October 14, 2003.

Present: Laurence, McHugh, & Cohen, JJ.

*Blackstone. Millville. Real Property,* Boundary. *Municipal Corporations,* Property. *Statute,* Construction.

On appeal of an action in the Land Court arising from a boundary dispute between two towns, Blackstone and Millville, in which the judge determined that a triangle of land containing over thirty-one acres that had been treated from 1916 to 1993 as part of Blackstone was actually part of Millville, this court concluded that, with the exception of a relatively small discrepancy in the location of Millville's northeast corner [566-567], the disputed land was part of Blackstone, where an ambiguity in the Act incorporating Millville, St. 1916, c. 282, was to be construed, like other grants of real property, by applying the familiar rule that, where the land conveyed was described by courses and distances and also by monuments that were certain or capable of being certain, the monuments governed, and the noncorresponding measurements must yield [567-569].

Civil action commenced in the Land Court Department on October 15, 1996.

The case was heard by *Leon J. Lombardi,* J.

*Richard J. Fallon* (*William M. Ryan* with him) for the plaintiff.

*William W. Hays* for the defendants.

Cohen, J. The towns of Blackstone and Millville dispute the municipal boundary between them. After a six-day trial, a judge of the Land Court issued a detailed decision in which he determined that a triangle of land containing over thirty-one acres that had been treated from 1916 to 1993 as part of Blackstone was actually part of Millville. Blackstone appeals, claiming that an ambiguity in the Act incorporating Millville,

---

[1]Commonwealth.

St. 1916, c. 282, must be resolved in its favor under the principle that "monuments" trump "measurements." Mindful that the Legislature may be in the best position to bring this dispute to closure, we are of the opinion that the disputed land is part of Blackstone and, accordingly, reach a different conclusion from that of the Land Court judge.

Section 1 of c. 282 provides, in relevant part, as follows:

> "All the territory now within the town of Blackstone which lies west of a straight line beginning at a stone monument in the boundary line between the town of Blackstone and the town of North Smithfield in the state of Rhode Island, which monument is seven thousand six hundred and thirteen feet easterly of the monument which marks the southwest corner of Blackstone and the southeast corner of Uxbridge; thence running northerly to a stone monument in the boundary line between Blackstone and the town of Mendon, which monument is seven thousand six hundred and thirteen feet easterly of the boundary line between Uxbridge and Blackstone, is hereby incorporated into a separate town by the name of Millville . . . ."

As found by the judge (and as illustrated by the sketch appended to this opinion), certain monuments were extant when c. 282 was passed: a monument designated by number 36 stood at the southwest corner of what was to become Millville where it bordered Uxbridge; a monument numbered 33 stood to the east of monument 36, on the Rhode Island border, but fell short of 7,613 feet from monument 36 by 151.10 feet; a monument also stood near the northwest corner of what was formerly Blackstone, marking its border with Uxbridge on the west and Mendon on the north. The judge found that no monument stood on the Mendon line at the newly created corner between Millville and Blackstone, but that there now exists a stone monument engraved "M," "M," and "B," located nineteen and thirty-three hundredths feet northwest of a point 7,613 feet from the monument marking the Uxbridge-Mendon corner. The judge concluded that this monument was erected after 1916.

Any issue as to the relatively small discrepancy in the location of Millville's northeast corner was found by the judge to have been waived by Blackstone, because it took inconsistent positions on this aspect of the dispute in its Land Court filings

and did not present pertinent evidence on the issue or join Mendon as a party to the proceedings. We do not disturb this ruling.

Of considerably more import to Blackstone is the judge's decision with respect to Millville's southeast corner. As the judge found, Millville and Blackstone each recognized monument 33 as marking the boundary between the towns without dispute until 1993. They carried out all governmental functions in reliance upon that boundary, e.g., tax assessments; tax takings; legal actions; voter registrations; census takings; and the issuance of licenses, permits, and certificates. The two towns maintained roadways and responded with police and fire personnel consistent with a recognition of the Blackstone-claimed line as the boundary between the two towns.

Then, in 1992, Millville hired a company, Cartographic Associates, Inc. (Cartographic), to prepare new maps for use by the Millville assessors. In doing its research, Cartographic discovered the discrepancy with respect to Millville's southeast corner and, in 1993, prepared a set of maps displaying two potential boundary lines. Cartographic advised Millville to undertake a survey.

Millville contacted the Massachusetts Highway Department (highway department), which performed a Static Differential Global Positioning Survey.[2] As a result of this survey, the highway department located new northeast and southeast corners for Millville. Between 1993 and October 22, 1996, when it was preliminarily enjoined from doing so, Millville collected taxes from owners of land situated within the disputed area.

The trial judge aptly framed the issue before him as follows:

"The dispute between the towns has arisen because of a lack of precision in the drafting of Chapter 282. On the one hand, Chapter 282 states definitively that the distance along the southerly border of Millville is to be 7,613 feet in length. On the other hand, the statute speaks of the distance of that southerly border starting at 'a' stone monument on the Rhode Island border between Blackstone and North Smithfield and being measured to 'the' monument at

[2]Blackstone attributes its subsequent travails to "bewitchment by the GPS gizmo."

the southwest corner of what was then Blackstone and the southeast corner of Uxbridge, i.e. monument 36."

The judge then concluded, as urged by Millville, that when the Legislature used the words *"the* monument" it was referring to monument 36, but when it referred to *"a* stone monument," it was referring to a monument to be erected in the future, and not monument 33.

The trouble with this reading of the statute is that it fails to take into account the clause following the words "a stone monument," i.e., "which monument *is* seven thousand six hundred and thirteen feet easterly of the monument which marks the southwest corner of Blackstone and the southeast corner of Uxbridge" (emphasis supplied). By utilizing the present tense, the subsequent clause defines the monument in question as an existing one, no less real than *"the* monument" (monument 36) at the southwest corner.

Admittedly, the existing monument at the southeast corner of Millville, monument 33, was not seven thousand six hundred and thirteen feet east of monument 36; but here is where a long-standing rule of construction comes into play. As an instrument of conveyance, c. 282 is to be interpreted in the same way as other grants of real property. See *Cold Spring Iron Works* v. *Tolland,* 9 Cush. 492, 496 (1852). Thus, like a deed containing a discrepancy between distances and monuments, it must be construed by applying the "familiar rule . . . that, where the land conveyed is described by courses and distances and also by monuments which are certain or capable of being made certain, the monuments govern, and the measurements if they do not correspond must yield." *Temple* v. *Benson,* 213 Mass. 128, 132 (1912). See *Ryan* v. *Stavros,* 348 Mass. 251, 258-259 (1964).

Having reached our decision on this ground, we need not consider Blackstone's alternative argument that Millville should be bound by its long-standing acquiescence to a boundary based upon monument 33.

The Land Court's ruling with respect to Blackstone's northwest border is affirmed; the ruling with respect to Blackstone's southwest border and Millville's southeast border is

reversed. The case is remanded to the Land Court for implementation consistent with this decision.

*So ordered.*