### FRANKLIN HOPKINS *vs.* OLIVER SMITH.

The proprietors of certain lands and flats were incorporated into the M. Corporation for the purpose of improving other flats across a channel, and fixed the interest of each proprietor in the property and rights of the corporation, in proportion to his shore frontage. A., who was a corporator by virtue of his ownership of a wharf and flats, conveyed by deed, dated June 1, 1857, to B. and C., partners, the wharf with all the flats thereto belonging, and all the flats to which he was entitled as owner of the wharf, "by an act of the Legislature, called the M. Corporation." The corporation, to raise money to improve the flats, fixed the value of the interest of proprietors, and voted that the interests should be represented by shares at $5 a share, but that no certificate of shares should be issued to any one for any interest until he paid for his proportion of such new stock as should be issued; that new stock at $5 a share should be issued to raise money; that each member paying for his proportion of the new stock should be entitled to a certificate therefor and also to a certificate for an equal number of shares on account of his original interest. Certificates were thus issued for two years, but afterwards simple receipts were issued for the assessments laid by the corporation. In those two years, B. and C. paid for their proportion of the new stock issued, and took, according to the plan, certificates for twice the number of shares for which they had paid; so that beside their certificates for shares on account of new stock, they had certificates for shares for about one fifth of their original interest. They then executed a deed by which they conveyed to D. the wharf and flats, by metes and bounds, and "also all the flats which we are entitled to as owners of the above-described wharf, being the same premises conveyed to us by A. by deed, dated June 1, 1857." The corporation refused to pay any dividend of profits to D. until the certificates were surrendered. *Held*, that the right to these certificates passed to D. and that he could maintain a bill in equity to have them delivered up to him.

BILL IN EQUITY, alleging that on May 1, 1866, the defendant and Franklin Hopkins, Senior, since deceased, conveyed to the plaintiff, by deed duly recorded, a parcel of land and a wharf and flats in Charlestown; that a part of the flats to which they were entitled as owners of the upland described in said deed, and which were conveyed by said deed, were held in common with the other proprietors of the Mystic River Corporation, a corporation chartered for the purpose of owning, improving and selling certain flats in Mystic River, and amounted to $\frac{582}{2088}$ of the property of the corporation; that the plaintiff purchased, and the defendant and Hopkins, Senior, intended to convey all their interest, right and property in said corporation; that before this conveyance they had paid $890 to the corporation as their proportion of assessments laid on the proprietors, and received receipts therefor, which, in accordance with a vote of the corporation, were in the form of certificates for 368 shares, "being receipts for twice the amount

paid in, to wit, receipts for the sum paid in, and receipts for an equal sum on account of the original interest in the flats ; " that the defendant and Hopkins, Senior, sold the plaintiff said receipts as part of their interest in the corporation; that Hopkins, Senior, transferred to the plaintiff one half of the receipts, to wit, for 184 shares, being those held by him, but the defendant, by some accident, did not transfer the receipts for the 184 shares held by him ; that the plaintiff and defendant both supposed the transfer had been made; that the plaintiff only recently found out that it had not been made, and thereupon asked the defendant to make it ; that the defendant refused ; and that the plaintiff, without these receipts or certificates, was unable to collect dividends declared by the corporation, and was deprived of the benefit of his interest in the flats held by him. The prayer was that the defendant might be decreed to transfer said receipts or certificates to the plaintiff, and for further relief.

The answer denied that the defendant ever conveyed or sold to the plaintiff any of his rights or interest in the Mystic River Corporation.

The case was referred to a master; and, as it appeared from the pleadings, master's report and agreed statement of facts, on which it was heard by *Chapman*, C. J., and reserved for the consideration of the full court, was substantially as follows:

By the St. of 1852, *c.* 105, the city of Charlestown, and the other proprietors of lands and flats in Charlestown, bounding on the Mystic River, between certain limits, were incorporated under the name of the Mystic River Corporation. They were authorized to inclose and fill up and sell a portion of the flats lying between the north and south channel of the river, and therefore not belonging to any individual, and were empowered to hold real and personal estate.

By the St. of 1855, *c.* 481, the corporation was granted the right to build docks and warehouses, lay vessels at the wharves, and receive wharfage and dockage; and its capital stock was fixed at a sum not to exceed $500,000, " *provided*, that no share in said capital stock shall be issued for a less sum or amount, to be paid in on each, than the par value of the shares first issued."

The city of Charlestown, by virtue of its owning an estate known as the New City Wharf, became the owner of an interest in the corporation, which, by subsequent apportionment among the proprietors, it was agreed should be fixed at $\frac{569}{5878}$ of the whole property of the corporation, the property being apportioned among the proprietors according to the number of feet owned by them on the shore of the river.

On May 25, 1857, the city of Charlestown passed a vote reciting that a proposition from the defendant and Hopkins, Senior, to purchase the New City Wharf for $12,000, had been received, and accepting the offer; and by deed, dated June 1, 1857, and recorded with Middlesex deeds, book 771, page 122, the city conveyed to the defendant and Hopkins, Senior, "traders and co-partners," "all that parcel of land lying in said Charlestown, called and known as the New City Wharf, situate and being on Medford Street on the Mystic River, together with all the docks, flats, appurtenances and privileges thereto legally belonging; being bounded, described, and measuring as follows: namely, the upland is bounded southwesterly on Medford Street, and that line measures one hundred and twenty-four $\frac{85}{100}$ feet, and its course is south 60° 25' 46" east. The easterly line runs on land and flats of P. J. Stone, north 29° 03' 39" east, and measures about fifty-nine feet from Medford Street to high-water mark. The westerly line runs on land and flats of Moses P. Worthen, north 29° 05' 24" east, and measures forty-seven $\frac{13}{100}$ feet from Medford Street to high-water mark; with all the flats to which the city is entitled, as owner of the above-described upland and wharf, by an act of the Legislature called the Mystic River Corporation, or are otherwise legally appurtenant thereto." And the defendant and Hopkins, Senior, mortgaged the premises back to the city, by a deed of even date with the deed from the city, referring to said deed and containing the same description, to secure their note for $11,000.

In 1858, the Mystic River Corporation adopted a plan for building a sea wall and filling up the flats, and thus improving its interest therein, and also determined the value of the interest of the proprietors, and that it should be represented by shares at

$5 a share. The number of shares representing the original interest which the defendant and Hopkins, Senior, bought from the city of Charlestown was 975.

The corporation then voted that no certificate of stock should be issued to any person for any interest until he paid for his proportion of such new stock, as might be issued from time to time by the corporation; that new stock, at $5 a share, should be issued for the purpose of raising money to be spent in improvements; that each member of the corporation, intending to avail himself of his interest, should subscribe for the new stock; and that each member paying for his proportion of the new stock should be entitled to certificates therefor, and also to certificates for an equal number of shares on account of his original interest. Thus, for every payment of $5, a member was entitled to a certificate of two shares, one of the new stock, and one on account of his original interest.

Pursuant to this vote certificates were issued to the members in 1860 and again in 1861. The defendant and Hopkins, Senior, subscribed for new shares in 1860 and 1861, paid $890, and became entitled thereby to certificates for 368 shares, namely, for 184 shares as new stock, and for 184 shares on account of their original interest; and the corporation issued to them certificates accordingly. Before subscribing for these shares they had dissolved a partnership which had existed between them, and by agreement they took the certificates for these shares in their individual names, each taking certificates for half the number. There was never any settlement of their partnership business, which had not been successful, and they did not, at any time, make any division of the wharf, or of their rights or interests therein.

After 1861 no certificates were issued by the corporation, but simple receipts were given for the assessments levied. The money accruing from all the assessments was spent in improving the property of the corporation.

Down to 1863, the defendant and Hopkins, Senior, had not paid in full the interest under their mortgage to the city of Charlestown, nor the taxes upon the wharf; and in that year

Hopkins, Senior, proposed to the city that, if the defendant would give up his interest in the wharf to him, he would pay half of the taxes and interest then due, provided he could be released from liability for the remaining half, and be allowed to remain in possession for three years, paying half the taxes and interest for that time, and not being held liable for the remaining half. The city accepted the offer, and Hopkins, Senior, continued in the occupation of the wharf under this arrangement for three years.

In 1866 the plaintiff bought the wharf property and took two quitclaim deeds, one from the defendant and Hopkins, Senior, and one from the city, both dated May 1, 1866. The defendant and Hopkins, Senior, by their deed conveyed "a certain parcel of land, wharf and flats, situated in said Charlestown, bounded and described as follows: namely, southwesterly by Medford Street, about one hundred and twenty five feet; southeasterly on land, wharf and flats, now or formerly of P. J. Stone; northeasterly on Mystic River; and northwesterly on land and flats now or formerly of one Worthen. Also all the flats which we are entitled to as owners of the above-described upland and wharf. Being the same premises conveyed to us by the city of Charlestown, by deed dated June 1, 1857, and recorded book 771, page 122." The city, by their deed, conveyed "all that parcel of land lying in said Charlestown called and known as the New City Wharf on Medford Street, on the Mystic River, together with all the docks, flats, and appurtenances and privileges thereto legally belonging, bounded and described as follows: namely, the upland is bounded southwesterly on Medford Street, and that line measures one hundred and twenty-four and $\frac{85}{100}$ feet, and its course is south 60° 25' 46" east; the easterly line runs on land and flats of P. J. Stone, north 29° 3' 39" east, and measures about fifty-nine feet from Medford Street to high-water mark; the westerly line runs on land and flats formerly of Moses P. Worthen, north 29° 5' 24" east, and measures forty-seven $\frac{13}{100}$ feet from Medford Street to high-water mark; with all the flats which said city is entitled to by virtue of its interest and estate in the above-described upland and wharf, by virtue of its deed of mort-

gage from Oliver Smith and Franklin Hopkins dated June **1,** 1857." By arrangement between all the parties, the plaintiff paid $10,000 to the city, and nothing to the defendant and Hopkins, Senior, but the city gave up to them the mortgage note of theirs which it held. Hopkins, Senior, transferred the certificates above mentioned held by him to the plaintiff, but the defendant did not transfer those held by him. The negotiation was almost entirely conducted by a committee of the city government, the plaintiff and Hopkins, Senior; nothing was said to the defendant about transferring to the plaintiff his certificates or any interest in the Mystic River Corporation, and no special mention was made to him of them. From the evidence of conversations between the plaintiff and Hopkins, Senior, at which the defendant was not present, the master found that Hopkins, Senior, intended to sell, and the plaintiff intended to buy, all the interest which the defendant and Hopkins, Senior, had in the corporation, and that the plaintiff and Hopkins, Senior, supposed that the deeds from the defendant and Hopkins, Senior, and from the city passed such interest. At the time of this purchase by the plaintiff the whole property of the corporation consisted of flats somewhat improved.

The plaintiff took possession of the wharf, has used and occupied it ever since, has paid to the Mystic River Corporation all assessments on the interest therein which was owned by the defendant and Hopkins, Senior, has attended meetings of the corporation and has been a director; the defendant has never attended meetings of the corporation or had notice thereof.

In 1871 the corporation declared a dividend, but voted that it should not be paid until the certificates of stock which had been issued were surrendered or cancelled; and the plaintiff did not know until he called for this dividend that the defendant held any certificates.

*W. A. Herrick,* for the plaintiff.

*G. O. Shattuck & W. A. Munroe,* for the defendant.

COLT, J. The bill alleges substantially that the defendant and Franklin Hopkins, Senior, deceased, by deed duly recorded, onveyed to the plaintiff a certain wharf together with the flats

to which, as owners of the wharf, they were entitled; that a part of the flats which were so conveyed, and to which they were entitled as owners of the wharf, were held by the grantors, Smith and Hopkins, in common with other proprietors in the Mystic River Corporation, a company chartered for the purpose of owning, improving and selling the same; that the defendant and Hopkins, Senior, before the conveyance of the wharf to the plaintiff, paid certain assessments made by the corporation upon the proprietors, and had taken receipts therefor, which, in accordance with a vote of the corporation, were issued in the form of certificates of stock, and were issued to the defendant and Hopkins, Senior, individually in equal amount; that the right to the benefit of these assessments and a transfer of these certificates was conveyed to the plaintiff by the deed of the wharf from the defendant and Hopkins, Senior; and that without these receipts or certificates he is unable to collect dividends declared by the corporation, and is deprived of the benefit of his interest in the flats so held. The prayer is that the defendant may be decreed to transfer these receipts or certificates to the plaintiff.

Upon the facts disclosed in the master's report, and in the agreed statement of the parties, we are of opinion that the plaintiff is entitled to the relief prayed for.

By the St. of 1852, *c.* 105, the city of Charlestown and the other proprietors of lands and flats situated in Charlestown and bounded as there described, were authorized to inclose and fill up a portion of the flats between the north and south channel in Mystic River, and for that purpose were made a corporation with power to hold real and personal estate, by the name of the Mystic River Corporation. By the St. of 1855, *c.* 481, the right to build warehouses, to lay vessels at the wharves and receive wharfage therefor, was given, and the capital stock of the corporation was fixed, with a proviso that no shares should be issued for a less amount to be paid in than the par value.

The rights granted were thus, by the terms of the act, limited to the riparian proprietors therein named, and under it the city of Charlestown, as the owner of the New City Wharf so called, became the owner of a certain share in the flats for the improve-

ment of which the charter of the Mystic River Corporation was obtained, and which it was agreed, by a subsequent apportionment among all the owners, should be a certain fractional undivided right in the whole, proportioned to the number of feet owned on the shore. It is this interest which the plaintiff now claims to hold.

In 1857 the city conveyed to the defendant and Hopkins, Senior, "copartners," the New City Wharf, describing it by metes and bounds, together "with all the flats to which the city is entitled, as owner of the above-described upland and wharf, by an act of the Legislature called the Mystic River Corporation," and took back a mortgage on the same property of even date and referring to the deed, to secure most of the purchase money. The conditions of this mortgage were not fulfilled, and in 1863 the city made an arrangement that Hopkins, Senior, should occupy the wharf for three years on paying one half the interest, and taxes for that time; but no steps were taken to foreclose the mortgage.

The plaintiff acquired his title by two quitclaim deeds of the same date, one from the city conveying the wharf with all the flats to which the city was entitled by virtue of the mortgage from the defendant and Hopkins, Senior, and the other from the defendant and Hopkins, Senior, bounding the upland and wharf, with the words, "also all the flats which we are entitled to as owners of the above-described upland and wharf. Being the same premises conveyed to us by the city of Charlestown," with the date and registration of the deed referred to. These deeds convey to the plaintiff all the rights of property which were conveyed by the original deed to the defendant and Hopkins, Senior. The reference to that deed, which contains nothing in conflict with the particular description given in the deed to the plaintiff, must be held to enlarge, if necessary, the description in the latter so as to include all that is conveyed by the former deed. *Foss* v. *Crisp*, 20 Pick. 121. *Whiting* v. *Dewey*, 15 Pick. 428.

The case finds that the corporation recognized the title of the defendant and Hopkins, Senior, under the deed of the city, to the original interest in the flats and to the privileges secured by the

charter, and issued to them, as owners of that interest, the certifi-cates or receipts in question. But it is insisted that the plaintiff acquired no right to these certificates by the conveyances to him, because they are to be treated as certificates of stock in an inde-pendent corporation which the defendant holds in his own right. This is a question of intention to be ascertained by applying the terms of the deed to the subject matter. From the facts stated in the record, and the documents referred to, it is evident that the payments by the defendant for which these vouchers were issued, were made under a scheme adopted by the proprietors for the purpose of fulfilling the declared object of their incorporation, and thus improving their original interests in the flats. The money obtained from these assessments was applied to no other use, and went to increase the value of the real estate. In accordance with the plan adopted by the proprietors, and which was for a time followed, the certificates of stock so called were issued, not only for the money actually paid in, but for such portion of the pro-prietors' original interest in the property as would, upon an estab-lished valuation, equal the amount paid in. But the stock so issued represented only a small part of the original interest, and when the defendant and Hopkins, Senior, conveyed to the plaintiff, that interest was held by them as originally conveyed, with no at-tempt to represent it by stock, and unchanged in condition, except as it had been improved by means of the assessments in question. See *Holland* v. *Cruft*, 3 Gray, 162, 173.

The defendant's deed to the plaintiff conveying property of this peculiar description, with no words of reservation, is sufficient to transfer all his interest in the Mystic River Corporation and its improvements, including his interest in the stock issued; and the plaintiff is entitled therefore to a transfer of the certificates or re-ceipts, as evidence of property which from its peculiar character he would otherwise lose the benefit of, and for the refusal to transfer which the remedy at law would be inadequate. Story Eq. § 703. *Duncuft* v. *Albrecht*, 12 Sim. 189, 199.

*Decree accordingly, with costs.*