SAMUEL N. ABBOTT & others *vs.* LOUIS FRAZIER.

Berkshire. November 30, 1921. — March 3, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Deed,* Construction, Boundary.

In an action of tort for trespass *quare clausum fregit,* it appeared that the defendant owned land adjoining land of the plaintiff on the east and that the alleged trespass was the placing of iron pipes with wires on a line alleged by the plaintiff to be nine inches on his land from his eastern boundary line. The parties derived their titles through mesne conveyances from a common grantor. His conveyance to one Sayre, through whom the plaintiff derived title, was made in 1888, and preceded that to the defendant's predecessor in title. Sayre, at different dates in October, 1918, conveyed to the immediate predecessor in title of the plaintiff three parcels which divided his tract longitudinally. In December, 1918, only the most easterly portion of the tract was conveyed to the plaintiff. The parties were agreed as to the position of the northwesterly corner and of

the westerly boundary line of the tract described in the deed of 1888, and that its northwesterly corner was at a certain point "on the southerly side of Main Street." The eastern and western boundaries of the tract were of equal length, its southern boundary line was "in a line parallel with said Main Street" and its northerly boundary was "along said Main Street." In 1888 Main Street was straight. In 1895, the municipality made it a curved street with a uniform convexity projecting southerly in part across the former straight line of the street, and it was so in 1918. Each of the three deeds to the plaintiff's immediate predecessor in title in October, 1918, gave as the point designated as the point of beginning from which their boundary lines were delineated, either a point of the same description as that of the northwestern point of the tract in the deed of 1888 or a point measured a certain distance from that point "in the southerly side [or "bounds"] of Main Street;" the northern boundaries of these lots were in "the southerly bounds" of Main Street; their southerly boundaries all were "in a line parallel with said Main Street;" their easterly and westerly boundaries all measured the same length as those of the deed of 1888; and the first parcel was described as the "westerly portion," the second as "a portion" and the third as "the easterly portion" of the property described in the deed of 1888, to which specific reference was made in each of the deeds. The lot conveyed to the plaintiff was described as bounded northerly by a line "running . . . along the southerly line of" Main Street, and the deed, after a surveyor's description, contained the statement, "Meaning and intending to convey the easterly portion of the Sayre property, so-called." It was agreed that, if the northerly boundaries were to be measured on the southerly line of Main Street as it was in 1888, the defendant was a trespasser, and that, if they were to be measured on the curved line of the street as it was after 1895, he was not a trespasser. *Held*, that

(1) The intention of the parties to the deeds as expressed by all the terms of the grant is the true canon of interpretation;

(2) All the deeds might be read together;

(3) The references to the deeds to Sayre in 1888 were a part of the conveyances in 1918;

(4) The deeds of Sayre in October, 1918, included all the land conveyed to Sayre in 1888;

(5) The measurements of the northern boundaries in the 1918 deeds should be on the straight line of Main Street as it was in 1888;

(6) The iron pipes and wires placed by the defendant were on land of the plaintiff.

TORT for trespass *quare clausum fregit*. Writ in the District Court of Northern Berkshire dated August 22, 1919.

On appeal to the Superior Court, the action was tried before *Irwin*, J.

The alleged trespass consisted of the driving of pipes of iron and the stringing of wire connecting same for, approximately, a distance of thirty feet, extended southerly from Main Street in the village of Blackinton in North Adams. The common boundary line of the respective lands of the parties was near the line of wire.

The plaintiffs contended that the line of wire was on their land. The defendant admitted driving the iron pipes and stringing the wire, but contended that title to the locus was not in the plaintiffs but was in the defendant. The line of iron pipes was approximately nine inches westerly of what the plaintiffs contended to be the easterly line of their land. The plaintiffs claimed only nominal damages.

The deeds relied on by the plaintiffs to establish their title are described in the opinion.

A "plan of Alice P. Sayre Tract, Blackinton, Mass.; Scale 10 feet to an inch; W. N. Tuller, C. E.," was introduced in evidence by the plaintiffs and marked Exhibit "H." The essential features of this plan, not drawn to scale, are reproduced above. The iron pipes driven by the defendant near the boundary between his land and the plaintiffs' are shown at the easterly side of the plan. The amount of curve of Massachusetts Avenue (formerly Main Street) and the distance between the spike and the iron pipe at the northeastern corner are exaggerated to permit adequate reproduction here.

The northeastern corner of the land of James R. Reynolds, shown on the plan, was located by a spike driven in the southerly side of the sidewalk of Main Street, and its location was not in dispute. The easterly line of Reynolds' land also was not in dispute. Main Street, West Main Street and Massachusetts Avenue are different names of the same highway.

It was admitted by the defendant that a straight line drawn

between the two iron pipes driven by the defendant at the northeast and southeast corner of Sayre land, which the plaintiffs contended constituted a trespass upon their land, would not be parallel with the easterly line of land of James R. Reynolds.

The plaintiffs introduced evidence tending to show that in 1888 and from that time to 1895, Main Street, as then used between those dates, was a straight street, that in the year 1895, its course was changed from a straight street to a curved street and that it has so existed and been so used continuously from 1895 to the present time. The defendant contended and introduced evidence tending to show that Main Street at the place indicated had always been curved.

It "was conceded and not in dispute" that, if the three hundred and seventeen feet which constituted the sum of the measurements on Main Street called for in the descriptions in the three deeds of Sayre to Reed, as given in the opinion, were measured easterly from the northeast corner of land of James R. Reynolds along the southerly line of the sidewalk of Main Street as it was curved and had been used since 1895, the locus of the alleged trespass would not be on the plaintiff's land; but that, if that three hundred and seventeen feet were measured from the northeast corner of land of Reynolds along a straight line and a straight street, as the jury found the street to be in 1888, the locus of the alleged trespass would be on the plaintiffs' land.

It further was "conceded" that, if the southerly line of Main Street, as found by the jury to have been straight in 1888, is the monument which controls the construction and fixes the extent of the grants in the various deeds from the S. Blackinton Woolen Company to Alice P. Sayre and from her to Emily M. Reed and by Emily M. Reed to the plaintiffs, the plaintiffs own the land where the alleged trespass was committed; but that, if the curved Main Street, as used continuously since 1895, is the monument which controls the construction and fixes the extent of the grants from Alice P. Sayre to Emily M. Reed and from Emily M. Reed to the plaintiffs, then the alleged trespass was not committed on land of the plaintiffs.

At the close of the evidence, the defendant asked for the following rulings:

"1. That upon the evidence the plaintiffs can not recover.

"2. That the northeast corner of plaintiffs' land is fixed by starting at the northeast corner of land of Reynolds, on the southerly side of 'Main Street,' as it existed and was used in 1918, at the time of plaintiffs' deed, and measuring easterly along said southerly side of said Main Street, as then used.

"3. The easterly line of plaintiffs' land was located by their deed at a point westerly of the place where it is alleged the trespass was committed.

"4. The place where it is claimed the trespass was committed, was by construction of the deeds introduced in evidence, upon land of defendant.

"5. The place of the alleged trespass was easterly of the easterly line of plaintiffs' land."

The judge refused to rule as requested, and submitted the following special question to the jury: "Was the line of the highway upon which the land conveyed to Alice P. Sayre by Blackinton Woolen Company by deeds dated January 23, 1888, and February 28, 1888, straight, or was it at that time curved as represented on a plan marked 'H'"? The jury answered that the line of the street in the year 1888 was straight. Upon the return of the jury's answer to the special question, the judge ordered the jury to return a verdict for the plaintiffs and to assess damages in the sum of $1. The defendant alleged exceptions.

The case was submitted on briefs.

*M. E. Couch,* for the defendant.

*H. P. Drysdale & J. L. Burns,* for the plaintiffs.

BRALEY, J. The plaintiffs and the defendant own contiguous parcels of land to which they derive title by mesne conveyances from the S. Blackinton Woolen Company. But the duly recorded deeds dated January 23 and February 28, 1888, from the company to Alice P. Sayre under whom the plaintiffs claim, having antedated the deed of July 22, 1902, to Thomas Fleming, who conveyed to the defendant, the questions for decision are, whether the description in the deeds to Sayre included the strip, title to which is in controversy, and, if included, whether this title has passed to the plaintiffs.

It appeared that, the deed of January 23, 1888, having contained misdescriptions, the quitclaim deed of February 28, 1888, was given to correct the errors. The description in this deed in

so far as material is as follows: "Beginning at the northeast corner of land of James R. Reynolds, on the southerly side of Main Street, running through the village of Blackinton, from . . . North Adams to Williamstown, . . . thence running southerly, one hundred thirty-nine (139) feet to the bank of the Mill Pond, so called, of the grantor, thence in a line parallel with said Main Street, three hundred and seventeen (317) feet, to a stake and stones, thence running northerly, one hundred thirty-nine (139) feet, to said Main Street, thence westerly along said Main Street, to the place of beginning." While the description is free from ambiguity, it is plain that "Main Street" is a boundary or monument within the rule stated in *Temple* v. *Benson,* 213 Mass. 128, 132, and cases there collated, and parol evidence was admissible to show, and the jury could find, "that in 1888 and from that time to 1895 Main Street, as then used between those dates, was a straight street and that in the year 1895, the course of said street was changed from a straight street to a curved street and that it has so existed and been so used continuously from 1895 to the present time." *Clark* v. *Munyan,* 22 Pick. 410, 416. *Temple* v. *Benson, supra.*

The defendant however "claimed that . . . Main Street at the place indicated had always been curved, continuously from 1888 to the present time and introduced evidence tending to sustain said claim." The trial judge without objection or exception submitted the following question to the jury: "Was the line of the highway upon which the land conveyed to Alice P. Sayre by Blackinton Woolen Company by deeds dated January 23, 1888 and February 28, 1888, straight, or was it at that time curved as represented on a plan marked 'H'?" And the jury answered, "that the line of the street, in the year 1888 was straight."

The alteration of Main Street in 1895 by the municipality whereby it was changed from a straight line to a slight curve without any land being taken could not deprive Alice P. Sayre of the premises conveyed by the grant of the company. It is obvious that, the line being straight when she acquired title, she was seised in fee of the strip. The northeast corner of the land of James R. Reynolds and "the easterly line of" Reynolds' land were not in dispute, and the words "Main Street," "West Main Street" and "Massachusetts Avenue" are different names of the same highway.

The descriptions in the deeds of Alice P. Sayre to Emily M. Reed, dated respectively October 7, 1918, and October 8, 1918, and October 22, 1918, read as follows: "Beginning at the northeast corner of land of James R. Reynolds, on the southerly side of Main Street, running through the village of Blackinton from said North Adams to Williamstown, in said county of Berkshire, thence running southerly on the easterly line of said Reynolds, one hundred thirty-nine feet (139 ft.) to the bank of the Mill Pond, thence easterly in a line parallel with said Main Street, eighty-three feet (83 ft.) to a stake and stones, thence running northerly in a line parallel with said Reynolds' east line, one hundred thirty-nine feet (139 ft.) to the southerly bounds of said Main Street, thence westerly on the southerly bounds of said Main Street, eighty-three feet (83 ft.) to the place of beginning. Being westerly portion, as herein described of land deeded to me by S. Blackinton Woolen Company . . . to which reference is had."

"Beginning at a point in the southerly side of Main Street, in the village of Blackinton, said point being eighty-three feet (83 ft.) easterly from James R. Reynolds' northeast corner, thence southerly in a line parallel with said Reynold's east line, one hundred thirty-nine (139 ft.) to a stake and stones, thence easterly in a line parallel with said Main Street, forty-three feet (43 ft.) to a stake and stones, thence northerly one hundred thirty-nine feet (139 ft.) to the southerly bounds of said Main Street, thence westerly on the southerly bounds of said Main Street, forty-three (43 ft.) to the place of beginning. Being a portion, as herein described, of land deeded to me by deed of S. Blackinton Woolen Company, to which reference is had, at the Northern Berkshire Registry of Deeds."

"Beginning at a point in the southerly bounds of Main Street, running through the village of Blackinton from said North Adams to Williamstown, in said County of Berkshire, said point being one hundred twenty-six feet (126 ft.) easterly from the northeast corner of land of James R. Reynolds, thence southerly in a line parallel with said Reynolds' easterly line, one hundred thirty-nine feet (139 ft.) to a stake and stones, thence easterly in a line parallel with said Main Street, one hundred ninety-one feet (191 ft.) to stake and stones, thence northerly one hundred thirty-nine feet (139 ft.) to the southerly bounds of said Main Street, and thence

westerly one hundred ninety-one feet to the place of beginning. Meaning and intending to convey the easterly portion, as herein described, of land conveyed to me by S. Blackinton Woolen Company. Refer to Northern Berkshire Registry of Deeds, book 169 page 546."

It being undisputed that at the date of these deeds Main Street had become a curved street, the defendant contends as matter of law that the reference in these deeds to Main Street must be held to be Main Street as it contemporaneously existed unless there is something to control the presumption. But Alice P. Sayre by the first deed conveyed the "westerly portion, as herein described of land deeded to me by S. Blackinton Woolen Company . . . to which reference is had." And by the second deed "a portion, as herein described, of land deeded to me by deed of S. Blackinton Woolen Company, to which reference is had, at the Northern Berkshire Registry of Deeds." The third and last deed recites in the granting clause, "Meaning and intending to convey the easterly portion, as herein described, of land conveyed to me by S. Blackinton Woolen Company. Refer to Northern Berkshire Registry of Deeds, book 169 page 546." If the defendant's contention is sound, the grantor by these deeds conveyed all the land granted to her by the company except the strip in dispute. It is settled that the intention of the parties as expressed by all the terms of the grant is the true canon of interpretation. *Gray* v. *Kelley,* 194 Mass. 533. The deeds may be read together. *Clap* v. *Draper,* 4 Mass. 266. *Watson* v. *Boylston,* 5 Mass. 411, 417. *Lipsky* v. *Heller,* 199 Mass. 310, 315. And the references to the title deed of Alice P. Sayre were a material part of each conveyance. It had the same effect as if the entire description in that deed had been copied into each conveyance, and not being inconsistent with the particular descriptions, the grant should be held to include all the land. *Foss* v. *Crisp,* 20 Pick. 121. *Hopkins* v. *Smith,* 111 Mass. 176. *Pollard* v. *Ketterer,* 221 Mass. 317, 322. It cannot be assumed that she intended to retain title to a strip of land which on the record is apparently so infinitesimal in area as to have no actual value. We are therefore of opinion that the grantor intended to convey without reservation all her land and that under all the language used by her in the granting clause of each deed, and her intention not being inconsistent with the rules of law, Emily M.

Reed, the grantee, acquired title accordingly. *Frost* v. *Spaulding,* 19 Pick. 445, 446. *Melvin* v. *Proprietors of Locks & Canals,* 5 Met. 15, 28. *Crocker* v. *Cotting,* 166 Mass. 183.

The deed of December 9, 1918, from Emily M. Reed to the plaintiffs has this description: "Beginning at a stake lying in the southerly line of Massachusetts Avenue, it also being at the northwest corner of the within described land; thence running easterly along the southerly line of Massachusetts Avenue, sixty-four and seventy-three hundred feet (64.73 ft.) to a stake; thence turning an interior angle of eighty-seven degrees and two minutes and running southerly one hundred thirty-nine and three tenths feet (139.3 ft.) to an iron pipe; thence turning an interior angle of ninety-one degrees and forty-five minutes and running westerly sixty-four and seventy-five hundredths feet (64.75 ft.) to a stake; thence turning an interior angle of eighty-eight degrees and fifteen minutes and running northerly one hundred thirty-seven and seven tenths feet (137.7 ft.) along land of the grantor to the place of beginning. The last mentioned line falling about midway between the two houses and making an interior angle of ninety-two degrees and fifty-eight minutes with the first mentioned line. Meaning and intending to convey the easterly portion of the Sayre property, so called." The recital "Meaning and intending to convey the easterly portion of the Sayre property so called," shows in this deed as in the previous deeds the intention of the grantor to convey her title to this portion vested in her by the deed of Alice P. Sayre of October 22, 1918. The plan moreover put in evidence by the plaintiffs shows that the easterly line of their land as described in the deed to them is parallel with the undisputed easterly line of the Reynolds land, and the northeast corner of the plaintiffs' land measured in a straight line from the northeast corner of the Reynolds land gives the same distance as that shown in the deed to Alice P. Sayre. The defendant argues that this plan is unreliable; but whether it was inaccurate when compared with the plans, two in number, introduced by the defendant, which he claimed showed title in him, was a question of fact which the jury have settled adversely to his contention.

The result is, that the defendant's requests were rightly denied and that the plaintiffs are entitled to judgment on the verdict.

*Exceptions overruled.*